Filed 5/18/22  In re C.R. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re C.R., a Person Coming Under the Juvenile Court Law. | 2d Crim. No. B311672 (Super. Ct. No. YJ40696) (Los Angeles County) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>C.R.,<br><br>    Defendant and Appellant. | |

C.R. appeals from the jurisdictional and dispositional orders entered after the juvenile court sustained allegations that he committed second degree vehicular burglary (Pen. Code,[1] §§ 459, 460, subd. (b)), resisting arrest (§ 148, subd. (a)(1)), and assault with force likely to cause great bodily injury (§ 245, subd.

---

[1] Undesignated statutory references are to the Penal Code.

(a)(4)).[2]  It declared him a ward of the court and ordered him suitably placed in an open facility.  C.R. contends:  (1) there was insufficient evidence to prove that he resisted arrest, and (2) the matter must be remanded for the juvenile court to declare whether the burglary and assault he committed were felonies or misdemeanors.  We remand for a declaration of whether C.R. committed felony- or misdemeanor-level burglary and assault, and otherwise affirm.

FACTUAL AND PROCEDURAL HISTORY

C.R. skateboarded past the Culver City home of A.S. and I.L.  T.S. was also at the house.  When I.L. saw C.R. get into her car, she and A.S. ran outside.  As they approached, C.R. ran away with I.L.'s diaper bag and fanny pack.  A.S. and I.L. followed him.

A.S. caught up to C.R. and tried to retrieve I.L.'s belongings.  C.R. punched A.S. in the face, causing his lip to bleed.  A.S. then grabbed C.R. and the two fell to the ground. C.R. dropped I.L.'s belongings and ran away.

I.L. followed C.R. in her car, and T.S. followed I.L. in his car.  T.S. noticed that his glovebox was open and his sunglasses were missing.  When he saw C.R. run into a yard, he called police.  Four officers responded and arrested C.R.

C.R. was charged with burglary, resisting arrest, and assault with force likely to cause great bodily injury.  One of the police officers who arrested C.R., Officer Rock, testified that he and three of his fellow officers—Officers Ogden, Salazar, and

---

[2] During the proceedings, the juvenile court also found true an allegation that C.R. committed attempted second degree robbery (§§ 664/211, 212.5, subd. (c)), but that incident is unrelated to this appeal.

West—located C.R. and drew their weapons. C.R. stopped walking and complied with Officer Ogden's commands to drop to his knees and place his hands behind his head. When the officer tried to handcuff C.R., however, C.R. tensed his body. In response, Officer Ogden put his knee on C.R.'s back and forced him to the ground. Officers Rock, Salazar, and West held him there as Officer Ogden handcuffed C.R.'s left wrist. When he then tried to handcuff C.R.'s right wrist, "it seemed as if [C.R.] was trying to get his right arm back to the front of his body."

During closing, the prosecutor argued that C.R.'s act of "tightening his muscles and preventing [Officer Ogden] from putting his hands behind his back" satisfied the resistance element of the resisting arrest statute, and that C.R. further resisted when he "kept trying to reach for his waistband" with his right arm after his left had been handcuffed. The prosecutor also argued that there was no evidence that anything would have "caused [C.R.] to do [these actions] involuntarily."

The juvenile court found true the allegations that C.R. burglarized T.S.'s vehicle, resisted or obstructed Officer Ogden, and assaulted A.S. It did not declare whether any of C.R.'s offenses were felonies or misdemeanors. It calculated his maximum period of confinement to be six years.

DISCUSSION

*The resisting arrest finding*

C.R. contends there was insufficient evidence to sustain the juvenile court's finding that he resisted arrest. We disagree.

We review C.R.'s contention applying the same standards used to assess the sufficiency of the evidence to support an adult criminal conviction. (*In re V.V.* (2011) 51

3

Cal.4th 1020, 1026.)  Specifically, the evidence is sufficient to uphold the juvenile court's finding if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  While we must ensure that the evidence is reasonable, credible, and of solid value, we will not reweigh evidence, resolve conflicts therein, or reappraise the credibility of witnesses.  (*Ochoa*, at p. 1206.) Reversal is permitted only if "it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the finding that C.R. resisted arrest.  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

To sustain the resisting arrest allegation, there must be sufficient proof that C.R. """"willfully resisted, delayed, or obstructed [Officer Ogden] . . . when the officer was engaged in the performance of his . . . duties.""" (*Yount v. City of Sacramento* (2008) 43 Cal.4th 885, 894-895.)  As to the first of these requirements, C.R. argues Officer Rock's testimony could not establish this element because his testimony was based on hearsay rather than personal knowledge.  But C.R. failed to object to Officer Rock's testimony during the jurisdictional hearing.  His argument is forfeited.  (*People v. Jackson* (2016) 1 Cal.5th 269, 366-367.)  And even if it weren't, it is reasonable to infer that Officer Rock had personal knowledge of his partner's interactions with C.R. given that he was right next to him during the arrest.

C.R. next takes issue with the prosecutor's argument that his "act of 'tightening his muscles'" constituted resistance because there was no proof that that act was voluntary.  He also claims the prosecutor mischaracterized the evidence when he

4

argued that C.R. was "'trying to reach for his waistband'" with his right hand after his left had been handcuffed. Again, however, C.R. did not object to the prosecutor's arguments at the jurisdictional hearing. His claims are forfeited. (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1333.)

They also lack merit. It can be reasonably inferred that C.R. tensed his body to prevent Officer Ogden from handcuffing him. And even if C.R. did not reach for his waistband, moving his arm away from Officer Ogden can be reasonably inferred to be an attempt to evade the officer's grasp. Substantial evidence thus supports the finding that C.R. resisted, obstructed, or delayed Officer Ogden. (*In re J.C.* (2014) 228 Cal.App.4th 1394, 1400.)

As to the second element of the resisting arrest allegation, C.R. argues this element was not established because Officer Ogden used excessive force. "The long-standing rule in California . . . is that a defendant cannot be convicted of an offense against a peace officer "'engaged in . . . the performance of . . . [their] duties'" unless the officer was acting lawfully at the time the offense . . . was committed." (*In re Manuel G.* (1997) 16 Cal.4th 805, 815, italics omitted.) This is "'because an officer has no duty to take illegal action.'" (*Ibid.*) It is illegal for an officer to use excessive force. (*People v. White* (1980) 101 Cal.App.3d 161, 164.) The force used must instead be reasonable under the circumstances. (*People v. Fosselman* (1983) 33 Cal.3d 572, 579.)

We evaluate the reasonableness of the force Officer Ogden used against C.R. "from the perspective of a reasonable officer on the scene." (*In re Joseph F.* (2000) 85 Cal.App.4th 975, 989.) "The inquiry is an objective one: Was [Officer Ogden's] action objectively reasonable in light of the facts and

circumstances confronting him, without regard to his underlying intent or motivation?" (*Ibid*.) Answering this question "requires a careful balancing of "'the nature and quality of the intrusion on [C.R.'s] Fourth Amendment interests'" against the countervailing governmental interests at stake." (*Graham v. Connor* (1989) 490 U.S. 386, 396.) This, in turn, requires us to scrutinize "the severity of the crime[s] at issue, whether [C.R.] pose[d] an immediate threat to the safety of [Officer Ogden] or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." (*Ibid*.)

Here, C.R. does not identify which actions constituted excessive force, but presumably it was when Officer Ogden put his knee on C.R.'s back and forced him to the ground and then Officers Rock, Salazar, and West held him there as Officer Ogden handcuffed him. Such actions were reasonable under the circumstances. First, C.R. had just committed two serious crimes: burglary and assault. Second, he posed a potential safety threat based on the assault he had just committed, a threat that was heightened because the officers did not know whether C.R. was armed. And third, C.R. was resisting arrest, tensing his body and moving his arm away when Officer Ogden tried to handcuff him. Substantial evidence thus supports the juvenile court's implied finding that the officers did not use excessive force, but were instead engaged in the performance of their duties when they arrested C.R. We must accordingly uphold its true finding on the resisting arrest allegation.

*The burglary and assault findings*

C.R. contends, and the Attorney General concedes, that the matter must be remanded for the juvenile court to

6

declare whether C.R.'s burglary of T.S.'s car and assault of A.S. were felonies or misdemeanors.  We agree.

If the juvenile court determines that a minor committed an offense that would be punishable as either a felony or a misdemeanor if it had been committed by an adult, it must declare, on the record, whether that offense was a felony or a misdemeanor.  (Welf. & Inst. Code, § 702; *In re Manzy W.* (1997) 14 Cal.4th 1199, 1204.)  Absent such a declaration, the matter must be remanded unless "the record as a whole establishes that the . . . court was aware of its discretion to treat the offense as a misdemeanor."  (*In re Manzy W.*, at p. 1209.)  That a minute order identifies an offense as a felony is not enough to show that the court was aware of its discretion.  (*Id.* at p. 1208.)

Here, the juvenile court sustained allegations that C.R. committed second degree burglary and assault with force likely to produce great bodily injury.  Both offenses are punishable either as felonies or misdemeanors.  (§§ 245, subd. (a)(4) [assault], 461, subd. (b) [burglary].)  But the court never expressly declared C.R.'s offenses to be felonies or misdemeanors. And other than the minute order, nothing in the record shows that the court was aware of its discretion to declare the offenses felonies or misdemeanors.  We must thus remand the matter for the required declarations.  (*In re Manzy W.*, *supra*, 14 Cal.4th at pp. 1210-1211.)

7

## DISPOSITION

The matter is remanded to the juvenile court for the express declarations required by Welfare and Institutions Code section 702 and a possible recalculation of C.R.'s maximum period of confinement.  In all other respects, the jurisdictional and dispositional orders are affirmed.

<u>NOT TO BE PUBLISHED.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

8

Sabina A. Helton, Judge

Superior Court County of Los Angeles

_____

Elana Goldstein, under appointment by the Court of
Appeal, for Defendant and Appellant.
Rob Bonta, Attorney General, Lance E. Winters,
Chief Assistant Attorney General, Susan Sullivan Pithey,
Assistant Attorney General, Roberta L. Davis and David E.
Madeo, Deputy Attorneys General, for Plaintiff and Respondent.